UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VERNON DALE MUSTIN,<br><br>Defendant. | No. 1:09-cr-00422-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 50) |

Pending before the court is defendant Vernon Dale Mustin's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's medical condition and the alleged risks posed to him by the ongoing coronavirus ("COVID-19") outbreak.  (Doc. No. 50.)  For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On February 14, 2011, defendant Mustin entered his plea of guilty to mailing an explosive device with the intent to kill or injure in violation of 18 U.S.C. §§ 1716 and 2(b), as alleged in Count Two of the underlying indictment.  (Doc. Nos. 7, 41, 42.)  Specifically, defendant, a resident of Oklahoma at that time, admitted to mailing five pipe bombs to his brother in Visalia,

/////

/////

1

California. (Presentence Report at 4–5.)[1]  Each pipe bomb "contained a black powder substitute, Pyrodex, and ten .22 caliber rifle shells." (*Id.* at 5.)  Defendant's nephew opened the package containing the five pipe bombs when it arrived, which exploded and caused defendant's nephew to suffer serious bodily injury. (*Id.* at 4.)  A subsequent investigation by postal inspectors revealed that defendant likely sent his brother the explosive in retaliation over a prior conflict between the two.  Specifically, defendant said that his brother had "bugged" his house and a note was recovered from defendant's room stating that his brother would be responsible if defendant were ever murdered because his brother "hires thugs." (*Id.* at 5.)  As part of the factual basis for his guilty plea, defendant acknowledged that he sent the pipe bomb with the intent to kill or injure the receiver. (Doc. No. 41 at 5–6.)  It was determined that under the U.S. Sentencing Guidelines, defendant Mustin's adjusted offense level was 32 and his criminal history placed him in category III, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 151 and 188 months. (*Id.* at 25.)  The U.S. Probation Office recommended a sentence a high-end guideline sentence of 188 months. (*Id.*)  On July 5, 2011, the court sentenced defendant to 156 months in prison with a 36-month term of supervised release to follow. (Doc. Nos. 48; 49 at 2–3.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Butner Federal Correctional Institute (Medium I) located in Butner, North Carolina ("FCI Butner"). (Doc. No. 50 at 8.)  According to the BOP's online inmate locator, defendant's projected release date from prison is December 21, 2020.  *Find an inmate.*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Oct. 13, 2020).  On September 4, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 50.)  On September 25, 2020, the government filed its opposition to the motion, and on September 30, 2020, defendant filed his reply thereto. (Doc. Nos. 57, 62.)

/////

---

[1] At the time of defendant Mustin's sentencing in 2011, presentence reports were not filed on the public docket.  Therefore, the undersigned obtained a copy of the presentence report in defendant's case from the U.S. Probation Office and has relied in part upon that document for this summary background.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

3

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not

---

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

5

### A. Administrative Exhaustion

On either May 18 or May 20, 2020, defendant Mustin submitted an administrative request to the Warden at FCI Butner seeking his compassionate release. (Doc. Nos. 50-1 ¶ 5; 57 at 3.) On June 1, 2020, the Warden denied Mustin's request. (Doc. No. 57-1 at 8.) Because his request was denied within 30 days, defendant was required to appeal the denial of his request to the BOP's Regional Director pursuant to 28 C.F.R. § 542.15(a). *See supra* note 1. Nonetheless, the government has conceded that defendant satisfied the administrative exhaustion requirement here. (Doc. No. 57 at 3.) In light of that concession and because a failure to administratively exhaust a claim is normally viewed as an affirmative defense that must be asserted and proven, the court will address the merits of the pending motion below.

### B. Extraordinary and Compelling Reasons

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

/////

/////

>The defendant is
>
>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical or mental health because of the aging process,
>
>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Mustin argues that extraordinary and compelling reasons warranting his compassionate release exist due to medical conditions. To qualify for compassionate release,

---

[5] However, because defendant Mustin is currently only 62 years old (Doc. No. 50 at 8), his age and age-related factors do not play a role in consideration of his pending motion.

7

defendant must demonstrate he is suffering from some "serious" medical condition, or is physically deteriorating due to the aging process, in a manner "that substantially diminishes [his] ability . . . to provide self-care" at FCI Butner and the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant argues he suffers from obesity, Type 2 diabetes, serious heart conditions, and hypertension. (Doc. No. 50 at 15–17.) At the time of sentencing, it was noted that defendant suffered from high blood pressure, had his gall bladder and appendix removed in 1974, and was involved in a car accident where he suffered "a severe head injury"—but other than those conditions, "he reported no other significant medical health concerns." (Presentence Report at 15.) However, based on the 300-plus pages of BOP medical records submitted in connection with the pending motion, it does appear that defendant's medical circumstances have changed significantly since he began serving his sentence of imprisonment. According to a BOP medical record generated in May 2020, defendant currently suffers from the following conditions: morbid obesity, Type 2 diabetes, benign essential hypertension, and he is documented as having a coronary angioplasty implant and graft and other cardiac implants and grafts, in addition to many other medical ailments such as depression and schizophrenia. (*See* Doc. No. 54 at 199–203 (sealed).) The government concedes that defendant suffers from these conditions. (Doc. No. 57 at 3.)

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant Mustin is at higher risk for becoming severely ill if he were to contract COVID-19 based on his morbid obesity, Type 2 diabetes, and his potentially serious heart conditions which have required implants and grafts. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Oct. 13, 2020). Furthermore, defendant "might be at an increased risk for severe illness from" COVID-19 based on his benign essential hypertension. *Id.* (stating those who suffer from pulmonary hypertension are in fact at risk, as opposed to hypertension generally which "may" place an individual at risk). Finally, defendant's age likely places him, to some
/////

1  degree, at a greater risk of severe illness from COVID-19 as well.  *Id.*  In sum, defendant Mustin
2  suffers from several serious comorbidities.

3  Therefore, the court concludes that defendant has and is "suffering from a serious physical
4  . . . condition . . . from which he . . . is not expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1
5  (A)(ii)(I).  The court also concludes that defendant is "experiencing deteriorating physical . . .
6  health because of the aging process" and he is not expected to recover.  *See* U.S.S.G. § 1B1.13,
7  cmt. n.1 (A)(ii)(III).  Even so, the remaining question then is whether defendant Mustin's medical
8  conditions "substantially diminish[] [his] ability . . . to provide self-care" at FCI Butner.  *See*
9  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

10  Although defendant suffers form serious medical conditions, the record before the court
11  does not demonstrate that he is hindered in providing himself with "self-care" while imprisoned
12  at FCI Butner.  As a threshold matter, defendant does not argue that any of his medical conditions
13  directly lessen the quality of his life while in prison.  By way of examples, defendant does not
14  argue that he is somehow unable to move freely in prison due to his medical conditions or that he
15  is unable to properly care for his medical conditions in some manner, such as taking medications.
16  And the BOP medical documentation provided in connection with the pending motion reveals
17  that defendant receives proper and regular medical care at FCI Butner.  (*See generally* Doc. No.
18  54 (sealed).)  As of September 2020, just last month, defendant appeared "[w]ell" according to
19  the medical staff in prison.  (Doc. No. 61 at 3 (sealed).)  In short, there is no evidence before the
20  court that defendant is unable to provide self-care for his medical conditions at FCI Butner.

21  Instead, defendant argues that he is unable to provide self-care exclusively based on the
22  risk of his contracting COVID-19.  (Doc. No. 50 at 18–23.)  It is true that FCI Butner (Medium I)
23  has suffered from a moderate COVID-19 outbreak, with 183 inmates and 32 staff being reported
24  by the BOP as having tested positive for the virus but recovered, while nine inmates died at the
25  hands of the virus.  *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/
26  coronavirus/ (last visited Oct. 13, 2020).[6]  Presently, however, there are zero inmates and only

---

[6] FCI Butner (Medium I) has a population of 729 inmates.  *FCI Butner Medium I*, FEDERAL
BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lof/ (last visited Oct. 13, 2020).

one staff member who is reported as suffering from an active case of COVID-19.[7] Because it appears that current active cases among prisoners at FCI Butner have been reduced to zero, adding COVID-19 to the equation thus does not tip the scales in favor of defendant's compassionate release. On the evidence currently before it, the court cannot conclude that COVID-19 "substantially diminishes" defendant Mustin's ability to "provide self-care" inside FCI Butner. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant has failed to carry his burden in this regard. *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

Therefore, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Even if defendant Mustin's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, however, the undersigned is not persuaded that the requested reduction in sentence would be consistent with the consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[8] *See Parker*, 2020 WL 2572525, at *11.

Defendant argues that although his crime of conviction was certainly serious, "it was aberrant behavior that occurred as a direct result of Mr. Mustin's untreated mental illness." (Doc.

---

[7] While the undersigned does not necessarily accept these reported numbers at face value in light of current, but seemingly constantly changing, CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

[8] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

10

No. 50 at 24.) He goes onto argue that because he "has finally received the mental health diagnoses and treatment that he has needed," it is "ensure[d] that the offense conduct will not be repeated." (*Id.*) The court notes that at the time of his sentencing, defendant Mustin reportedly suffered from "paranoia and delusions." (Presentence Report at 15–16.) For example, on one occasion, defendant "tore the wall out of his apartment because he could hear people talking behind the walls." (*Id.* at 16.) The court recognizes defendant's mental health likely had an impact on his decision to engage in the underlying criminal conduct in this case. Nonetheless, the court is not convinced that defendant has necessarily been successfully treated with respect to his mental health, and is also not persuaded that defendant will not engage in similar conduct again. Notably, defense counsel does not identify any documentation from the BOP's medical records corroborating these claims of defendant's mental health recovery. Furthermore, defendant was sanctioned by BOP after admitting that he threatened to kill a psychiatric staff member in December 2018. (Doc. No. 57-1 at 10.) The court concludes that defendant has not carried his burden in demonstrating his purported rehabilitation. *See Greenhut*, 2020 WL 509385, at *1. Given the extremely violent nature of defendant's underlying criminal conduct, his propensity to believe others wish to commit violence against him, and his disciplinary record while imprisoned, the court cannot conclude that defendant's history and characteristics support his compassionate release. *See, e.g.*, *United States v. Vaughn*, No. 99-cr-30068, 2020 WL 4892932, at *3 (C.D. Ill. Aug. 20, 2020) (denying compassionate release to an inmate, while noting that he had conspired to place a bomb at his ex-girlfriend's house which ultimately exploded); *United States v. Schuett*, No. 2:14-cr-00364-JAD, 2020 WL 1677080, at *1 n.7 (D. Nev. Apr. 6, 2020) (explaining "the nature of [the defendant's] underlying crime (making bomb threats against judges in this courthouse) make him a poor candidate for compassionate release"). For similar reasons, the court concludes that defendant's confinement is consistent with the need "to protect the public from further crimes." *See* § 3553(a)(2)(C).

It is true that defendant only has approximately two months remaining on his prison sentence. At the same time, however, defendant was sentenced to a near low-end guideline term of imprisonment of 156 months, even though the U.S. Probation Office had recommended a high-

end of the guidelines sentence of 188 months.  (Doc. No. 49 at 2; Presentence Report at 25.)  In the undersigned's view, any sentence reduction would not reflect the seriousness of defendant's conduct of mailing an explosive with the intent to kill or seriously injure his brother, would not be sufficient to promote respect for the law, and would not provide just punishment while also affording adequate deterrence to criminal conduct.  *See* § 3553(a)(2)(A), (B).

Last, the granting of compassionate release would not necessarily serve to "provide the defendant with needed . . . medical care . . . in the most effective manner."  *See* § 3553(a)(2)(D).  As discussed above, although defendant suffers from serious medical conditions, he appears to be capable of providing self–care while in prison.

Therefore, consideration of the sentencing factors set forth in §3553(a) also do not support defendant Mustin's compassionate release.[9]

**CONCLUSION**

For the reasons explained above, the court concludes that defendant has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison.  Moreover, the court finds that the granting of release at this time is not consistent with the

/////

---

[9] Defendant has suggested that the court could amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement. (Doc. No. 50 at 26.) First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" and the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5, n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served and modify the conditions of supervised release to require home confinement for the remainder of his sentence. The court is unwilling to do so for the reasons set forth above. The BOP knows its capabilities to effectively and appropriately care for defendant Mustin in a custodial setting. If the BOP determines that defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard, the court trusts it will do so. The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence should be reduced at this time.

sentencing factors set forth in 18 U.S.C. § 3553(a).  Accordingly, defendant's motion for compassionate release (Doc. No. 50) is denied.

IT IS SO ORDERED.

Dated:   **October 16, 2020**   ⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽
                                            UNITED STATES DISTRICT JUDGE